**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

FRANCES C.,

     Plaintiff,

v.                                   CIVIL ACTION NO. 5:25-cv-00586

FRANK BISIGNANO,
Commissioner of Social Security,

     Defendant.

**PROPOSED FINDINGS & RECOMMENDATION**

Plaintiff Frances C. ("Claimant") seeks review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. This matter was referred by standing order to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3). Presently pending before this Court are Claimant's *Brief in Support of Complaint* (ECF No. 9) and the Commissioner's *Brief in Support of Defendant's Decision* (ECF No. 10). Having fully considered the record and the parties' arguments, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 9), **GRANT** the Commissioner's request to affirm his decision (ECF No. 10), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

I.    **BACKGROUND**

A.    **Information about Claimant and Procedural History of Claim**

Claimant was forty-seven years old at the time of her alleged disability onset date and fifty-two years old on the date of the decision by the Administrative Law Judge ("ALJ"). (Tr. 70, 80, 238).[1] She has a high school education, but no past relevant work experience. (Tr. 78-79). Claimant alleges that she became disabled on April 1, 2020,[2] due to the following physical impairments: post-traumatic stress disorder ("PTSD"); depression; anxiety; back issues; knee problems; osteoarthritis; rheumatoid arthritis; right-shoulder problems; thyroid problems; fatty liver; dysphagia; osteoporosis; and an ovarian cyst. (Tr. 115).

Claimant filed her application for Title XVI benefits (the "claim") on February 3, 2022. (Tr. 70). The Social Security Administration (the "Agency") denied the claim initially on November 4, 2022, and again upon reconsideration on November 1, 2023. *Id.* Thereafter, on or about November 15, 2023, Claimant filed a written request for hearing. *Id.* An administrative hearing was held before an ALJ via telephone on July 26, 2024. *Id.* Subsequently on September 11, 2024, the ALJ entered an unfavorable decision. (Tr. 80). Claimant sought review of the ALJ's decision by the Appeals Council that same day. (Tr. 1). The Appeals Council denied Claimant's request for review on August 6, 2025, and the ALJ's decision became the final decision of the Commissioner on that date. *Id.*

Claimant brought the present action on October 3, 2025, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed

---

[1] All references to "Tr." herein refer to the administrative *Transcript of Proceedings* filed in this action at ECF No. 6.

[2] It appears Claimant amended her onset date to February 3, 2022. (Tr. 92).

a transcript of the administrative proceedings on November 24, 2025. (ECF No. 6). Claimant subsequently filed her *Brief in Support of Complaint* on January 22, 2026. (ECF No. 9). In response, the Commissioner filed his *Brief in Support of Defendant's Decision* on February 19, 2026. (ECF No. 10). Claimant then filed her *Reply Brief* on March 5, 2026. (ECF No. 11). Accordingly, this matter is now ripe for adjudication.

### B.    Relevant Evidence

The undersigned has considered all evidence of record pertaining to the parties' arguments, including the medical evidence, and summarizes the relevant portions here for the convenience of the United States District Judge.

### i.    Treatment Records

With respect to Claimant's mental-health treatment, as the ALJ noted there were no mental-health records in the file aside from the Claimant's consultative-examination report, discussed *infra*. (*See* Tr. 77-78). With respect to Claimant's treatment for her physical health, Claimant does not raise issues related to her physical impairments in this § 405(g) action. (*See* ECF No. 9 at 2) (explaining that Claimant's mental-health impairment of PTSD is "the focus of her assignment of error"). Thus, Claimant's physical health records are largely not relevant. In visits to her primary-care provider, Claimant largely reported no mental-health symptoms, and her mental-status examinations were normal. (*See, e.g.*, Tr. 18, 24, 48, 398, 403, 693, 696, 1000, 1007, 1010). Claimant's primary-care provider did prescribe hydroxyzine for unspecified anxiety disorder "as needed" on a few occasions. (*See* Tr. 19, 25, 49).

### ii.    Claimant's Hearing Testimony

At the July 26, 2024 hearing before the ALJ, Claimant was represented by counsel and testified under oath. (Tr. 88-110). Claimant testified that she started "some kind of

3

medication . . . recently for anxiety and depression" on July 19, 2024. (Tr. 99). Claimant lives alone in an apartment. (Tr. 99-100). She does not have a driver's license. (Tr. 100). She has a high-school education and obtained a Certified Nursing Assistant ("CNA") certificate. *Id.* She is literate. *Id.* Claimant testified that in a typical day she watches television and plays games. (Tr. 100-01). She does not "like to be around a lot of people" and experiences trouble sleeping as well as pain. (Tr. 101-02). Claimant testified that she is able to take care of her personal hygiene independently. (Tr. 102). She is capable of performing light chores around the house and keeping her apartment clean. (Tr. 102-03). She is able to follow a television show while watching it, though she generally "just ha[s] it on for noise[.]" (Tr. 102). She likes to play games on her tablet. *Id.* She generally has her groceries delivered, but she makes occasional trips to Walgreens or the Dollar Store if needed. (Tr. 103). Claimant testified that she is unable to work because she is "just upset being around a bunch of people and [is] in a lot of pain." (Tr. 104).

### iii.    Vocational Expert Testimony

At the July 26, 2024 administrative hearing, the ALJ employed a vocational expert (the "VE") to aid him in determining whether Claimant could perform her past relevant work, or other work. (Tr. 107). The ALJ noted that Claimant did not have any past relevant work, so he asked the VE to assume that a hypothetical individual had the same age, education, and work history as the Claimant. *Id.* The ALJ hypothesized that the individual was capable of performing work at the light exertional level, with some additional limitations. *Id.* Specifically, the hypothetical individual (1) "could not deal with ladders, ropes, or scaffolding" but could perform "the rest of the postural[] [activities] . . . on an occasional basis"; (2) "could have no exposure to heights, moving machinery or hazards"; (3) "could have occasional exposure to hot and cold temperature extremes"; (4) could

reach bilaterally on a frequent basis; (5) could perform "[a]ll handling, fingering, and feeling" bilaterally on a frequent basis; (6) "would be limited to simple, routine tasks," and (7) "could occasionally deal with coworkers and supervisors, and the public." (Tr. 107-08). In response to the ALJ's hypothetical, the VE opined that the individual could be engaged in substantial gainful activity in occupations in the national economy in significant numbers. (Tr. 108). The VE provided three representative occupations, all of which were classified as "light" jobs, with a specific vocational preparation ("SVP") of two. *Id.* First, the VE listed a "laundry folder" job, with "approximately 21,000 jobs in the national economy." *Id.* Next, the VE listed a "housekeeping cleaner" position, with "approximately 234,000 jobs in the national economy." *Id.* Finally, the VE listed a "merchandise marker" job, with "approximately 68,000 jobs in the national economy." *Id.* The VE also testified in response to the ALJ that "[t]here would be no work" for an individual if he or she "would be off task 25 percent of a typical workday or a work week, outside of normal breaks and lunch due to her impairments[.]" *Id.*

### iv.    Medical Opinion Evidence

Licensed Psychologist Lester Sargent, M.A., performed a clinical interview with the Claimant and completed an Adult Mental Status Examination Report dated October 18, 2022. (Tr. 684-88). Claimant reported a longstanding history of depressive episodes with intermittent treatment, a distant history of abuse, and recent persistently depressed mood with loss of interest, trouble sleeping, feelings of guilt, and pain. (Tr. 684). She also indicated distressing memories of prior abuse, anxiety, and hypervigilance. *See id.* Claimant also reported a history of alcohol abuse ending in 2019, and a history of opiate use ending in 2018. (Tr. 685). Claimant reported handling her daily activities independently, including going to the store, keeping medical appointments, maintaining

her hygiene, and performing household chores including sweeping, cooking, and doing laundry. (Tr. 688). She spent time playing puzzle games, watching television, and reading. *Id.* Claimant further reported that she spent time on the phone, visited her neighbors occasionally, and had some close friends. *Id.*

On examination, Psychologist Sargent observed Claimant's mood "was remarkable for symptoms of depression and anxiety" with a congruent affect; her thought processes were circumstantial; her thought content was remarkable for suspiciousness of others; her speech "was somewhat loquacious"; her insight was "fair"; her psychomotor behavior indicated "evidence of pain behaviors and mild restlessness"; her recent memory "was severely impaired," her remote memory "was mildly deficient"; her concentration "was moderately impaired"; her persistence "was mildly deficient based on the claimant's ability to remain on task"; and her pace "was somewhat slow as evidenced during the evaluation." (Tr. 687). She also demonstrated "moderately impaired social functioning" during the evaluation. *Id.* However, Claimant's judgment "was within normal limits"; there was "no evidence of unusual perceptual experiences"; she was noted to be cooperative, with "fair" eye contact; she "was oriented to person, time, place, and circumstance"; she denied suicidal ideation; and her immediate memory was normal. *Id.* Psychologist Sargent assessed (1) Major Depressive Disorder, Recurrent, Moderate; (2) Post-Traumatic Stress Disorder ("PTSD"), Chronic; (3) Alcohol Use Disorder, in Remission; and (4) Opioid Use Disorder, in Remission. *Id.*

At the July 26, 2024 administrative hearing before the ALJ, psychiatrist Dr. Richard Cohen testified regarding Claimant's mental health.[3] (Tr. 92-93). Dr. Cohen

---

[3] Also at the July 26, 2024 administrative hearing before the ALJ, Dr. Gilberto Munoz testified regarding Claimant's physical health. (Tr. 93).

testified that he had not seen any mental-health treatment records for Claimant. (Tr. 96). However, his review of the medical records indicated diagnoses of depression with anhedonia, as well as "energy problems, guilt, and depressed mood." *Id.* Dr. Cohen testified that Claimant's medical records showed a Patient Health Questionnaire ("PHQ") "score of 0"—indicating "not at all"—in a self-reported questionnaire designed to screen for depression severity on both "4/24" and "[i]n May 2023[.]" *Id.* Dr. Cohen testified "you can't be depressed with that" score. *Id.* Additionally, Dr. Cohen noted that Claimant's mood was "within normal limits and you can't be depressed with that because you have to have a depressed or irritable mood[.]" *Id.* Further, he noted that Claimant was "not taking any psychiatric medications" as of May 2023. *Id.*

Dr. Cohen noted that Claimant had "six close friends," visited with family and friends, would "go out often" and was "able to read and work on puzzles." (Tr. 97-98). Claimant did not "need reminders for med[ications] or appointments, and . . . [can] finish tasks." (Tr. 98). She was capable of personal care, lived alone in an apartment, and was able to shop for groceries, cook, do laundry, and clean independently. *Id.* Based upon the foregoing, he opined that Claimant's mental-health conditions did not meet one of the Listings set forth in the Agency's regulations. (Tr. 97). He further opined that Claimant is limited "to simple repetitive tasks with occasional contact with supervisors, coworkers and the public." (Tr. 98).

## C.    Sequential Evaluation Process

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. §

423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R.

9

§§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her

"not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant had not engaged in substantial gainful activity since February 3, 2022, the application date. (Tr. 72). Next, the ALJ found that the following of Claimant's asserted impairments constituted "severe" impairments: cervical and lumbar spine disorder; osteoarthritis of the right shoulder; obesity; liver disorder; depression; anxiety; and PTSD. *Id.*

The ALJ determined that none of Claimant's impairments, or a combination thereof, met or medically equaled any of the impairments listed in the Social Security Administration's applicable regulations, at 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 72). Turning to Claimant's mental-health impairments, the ALJ discussed each of the four areas of mental functioning as part of the special technique. As to the first three areas of mental functioning—(1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace—the ALJ found that Claimant has a moderate limitation. (Tr. 74). As to the fourth and final area of mental functioning—adapting or managing oneself—the ALJ first stated that "the claimant has a mild limitation[,]" but at the end of the same paragraph the ALJ then stated that "the claimant has moderate impairment in this area." (Tr. 74-75). Because he determined that Claimant's impairments did not meet or equal a Listing under the Agency regulations, he next turned to the issue of Claimant's residual functional capacity ("RFC").

Upon assessing Claimant's RFC, the ALJ determined that Claimant has the ability to perform "light" work as defined in 20 C.F.R. § 416.967(b), with the following exceptions:

11

> she can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. She cannot work at unprotected heights or around moving machinery or hazards. She can tolerate occasional exposure to extreme temperatures and vibrations. She can frequently reach, handle, finger, and feel bilaterally. She is limited to simple, repetitive tasks and to occasional interaction with coworkers, supervisors, and the public.

(Tr. 75). The ALJ then concluded that—given the Claimant's age, education, work experience, and the limitations imposed by the Claimant's RFC—"there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 79). Because the ALJ determined that Claimant was unable to perform the full range of light work, he enlisted a VE to aid in his finding that Claimant is capable of working as (1) a laundry folder, with 21,000 jobs nationally; (2) a housekeeping cleaner, with 200,000 jobs nationally; and (3) a "marker," with 58,000 jobs nationally. *Id.* As a result, the ALJ concluded that Claimant "ha[d] not been under a disability, as defined in the Social Security Act, since February 3, 2022, the date the application was filed," and the claim for benefits was denied. (Tr. 79-80).

## II.    **LEGAL STANDARD**

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration

omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id*. (quoting *Craig*, 76 F.3d at 589).

## III.    DISCUSSION

In her challenge to the ALJ's decision, Claimant asserts that the RFC is not supported by substantial evidence because it does not properly account for Claimant's mental limitations. Claimant acknowledges that the RFC formulated by the ALJ addressed Claimant's mental limitations by limiting Claimant "to simple, repetitive tasks and to occasional interaction with coworkers, supervisors, and the public." (Tr. 75). However, Claimant argues that the ALJ erred because he found that Claimant had "moderate" limitations in the functional area of concentrating, persisting, or maintaining pace, but did not specifically account for this limitation in the Claimant's RFC and did not question the vocational expert regarding this limitation. Claimant explains that the Fourth Circuit found an ALJ "does not account for a claimant's limitations in concentration, persistence, and pace by restricting . . . to simple, routine tasks or unskilled work" because the ability to *perform simple tasks* does not necessarily equate to an ability to *stay* on task. (ECF No. 9 at 4) (quoting *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)). While there is no categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC, the ALJ must adequately explain why such limitations were excluded. (ECF No. 9 at 4-5)

(quoting *Shinaberry v. Berryhill*, 952 F.3d 113, 121 (4th Cir. 2020)). Claimant argues that the ALJ did not account for the moderate limitation in concentration, persistence, and pace and did not explain why such a limitation was omitted from the RFC, and that therefore "there is no accurate and logical bridge to support his findings" precluding meaningful judicial review. (ECF No. 9 at 8). Claimant argues that "remand for further proceedings is the only appropriate disposition of this case" as a result. *Id.*

In response, the Commissioner argues that the ALJ's decision "provides sufficient discussion to show why" he found that RFC adequately provided for the Claimant's moderate limitation in her concentration, persistence, and pace. (ECF No. 10 at 1). The Commissioner argues that the ALJ's analysis "provides the necessary insight into the ALJ's findings, and his decision should be affirmed." *Id.* at 1-2. The ALJ noted that Claimant's most significant finding on evaluation by the treating providers and consultative examiner was a deficit in her recent memory, while other findings were more mild or normal. *Id.* at 11 (citing Tr. 77, 687). The Commissioner concludes that, given the ALJ's "discussion of the evidence, including limited mental health complaints in the context of minimal to no mental health treatment, fulsome daily activities that included consistent self-care and puzzling, and the testimony of Dr. Cohen," the ALJ "provided more than sufficient explanation" for his determination that Claimant did not require any mental limitations with respect to concentration, persistence, and pace. *Id.*

In her reply brief, Claimant challenges the Commissioner's adequacy argument, emphasizing that "the ALJ explicitly identified that the 'simple, repetitive tasks' limitation was included to account for the understanding, remembering, or applying information limitations he found – *not* [concentration, persistence, and pace] CPP" limitations. (ECF No. 11 at 2). Claimant highlights that the Commissioner did not "point to any explanation

14

how the limitation to 'simple, repetitive tasks' accounted for the moderate limitations[.]" *Id.* Claimant concludes that the ALJ erred because he neither accounted for his own findings regarding concentration, persistence, and pace in the RFC, nor explained why this limitation was excluded from the RFC—making meaningful judicial review "impossible." *Id.*

The Fourth Circuit set forth the framework for analyzing this issue in two opinions: (1) *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), and (2) *Shinaberry v. Saul*, 952 F.3d 113 (4th Cir. 2020). First, in *Mascio*, the ALJ found that the claimant, who suffered from a mental-health disorder, had moderate limitations in concentration, persistence, and pace. *Mascio*, 780 F.3d at 633. Despite this finding, however, the ALJ "ignore[ed] (without explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace" when he conducted the function-by-function analysis, and "said nothing about Mascio's limitations" in the hypothetical posed to the vocational expert. *Id.* at 633, 637. The Fourth Circuit found that "a remand [was] in order . . . because the ALJ . . . gave no explanation for these omissions." *Id.* at 638. In making its *Mascio* ruling, the Fourth Circuit explained that an ALJ cannot summarily account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work, because the ability to perform simple tasks differs from the ability to stay on task. *Id.*

In *Shinaberry*, the Fourth Circuit explained that its *Mascio* decision "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry*, 952 F.3d at 121. "On the contrary, [the Fourth Circuit] explained that an ALJ can explain why a claimant's moderate limitation in concentration, persistence, or pace at step three does

not translate into a limitation in the claimant's RFC." *Id.* (internal quotations omitted). "For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect the claimant's ability to work, in which case it would be appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id.*

The Fourth Circuit in *Shinaberry* added that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* (citation omitted). Thus, in *Shinaberry*, the Fourth Circuit found that the ALJ's analysis was sufficient because he "discussed in detail the psychological evaluations performed by the SSA psychological consultants" who "opined that [the claimant's] concentration and task persistence were adequate[.]"*Id.* at 122. The ALJ "explained that . . . claimant's trouble with memory tasks as noted during the psychological consultative examination, support the additional mental limitation restricting the claimant to jobs requiring only simple, routine, repetitive tasks." *Id.* The Fourth Circuit found that the ALJ adequately "explained why the psychological evidence and [the claimant's] statements support[ed] a mental limitation to simple, routine, and repetitive tasks." *Id.* Thus, the Fourth Circuit held in *Shinaberry* "that the ALJ's findings and the mental limitation included in the RFC [were] sufficiently explained and supported by substantial evidence in the record." *Id.*

Here, the ALJ explained that he found Claimant has a moderate limitation with regard to concentrating, persisting, or maintaining pace based upon Mr. Sargent's finding that Claimant "had moderately impaired concentration . . . [and] had mildly deficient persistence and a somewhat slow pace" as well as Claimant's indication in her Adult

16

Function Report "that her ability to pay attention 'depends.'" (Tr. 74). However, the ALJ explained that Claimant also reported in her Adult Function Report "that she is able to finish what she starts." *Id.* Further, the ALJ explained that Lester Sargent, M.A., determined from his consultative examination of the Claimant that there were "no more than moderate limitations in any of the areas of mental health during the claimant's consultative examination aside from recent memory, which was accounted for in the claimant's residual functional capacity[.]" (Tr. 77). Further, the ALJ found it significant that "there were no mental health records in the file aside from the claimant's consultative examination report." (Tr. 77-78). Based upon these factors, "as well as the record as a whole," the ALJ found "that the record does not support a greater functional limitation than found within the residual functional capacity, which finds that the claimant . . . is limited to simple, repetitive tasks and to occasional interaction with coworkers, supervisors, and the public." (Tr. 78).

Unlike the ALJ in *Mascio*, who "ignore[d] (without explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace," here the ALJ explained that his RFC limitation to simple tasks was based upon Claimant's impaired memory, and that the record did not support a functional limitation for Claimant's other moderate limitations based upon the lack of mental health records and based upon Mr. Sargent's consultative examination report. Like the ALJ in *Shinaberry*, the ALJ thus provided sufficient discussion to demonstrate the evidentiary and logical basis for his RFC determination. Notably, Claimant presents no argument for why additional limitations were needed to account for her moderate limitations in concentration, persistence, and pace. The undersigned thus **FINDS** that the ALJ's decision is supported by substantial evidence, and there is no basis for remand.

17

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 9), **GRANT** the Commissioner's request to affirm his decision (ECF No. 10), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Frank W. Volk, Chief United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Chief Judge Volk.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTERED:    March 27, 2026

Dwane L. Tinsley
United States Magistrate Judge

19